### PERRY v. PERRY et al.

(Supreme Court, Appellate Division, Third Department.   November 10, 1915.)

1. Deeds ⬤⟜56—Delivery—Intention.

Whether there was a delivery of a deed depends upon the intention of the grantor, as evidenced by his acts and words at the time of the alleged delivery.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 117–123, 125; Dec. Dig. ⬤⟜56.]

2. Deeds ⬤⟜208—Delivery—Sufficiency of Evidence.

In an action for the cancellation of a deed to plaintiff's son, evidence *held* to show an irrevocable delivery, without reservation of control, by depositing the deed with his son's wife for the use of the son.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 625–632; Dec. Dig. ⬤⟜208.]

3. Escrows ⬤⟜7—Death of Grantee—Delivery to Heirs.

Where a grantor places his deed in another's hands for delivery to the grantee, and the grantee dies before the contingency contemplated for delivery occurs, the depositary may deliver to the grantee's heirs, and it will ordinarily be construed to have taken effect in the ancestor, so as to transmit title through him to the heirs by inheritance, where nothing intervenes to prevent.

[Ed. Note.—For other cases, see Escrows, Cent. Dig. § 16; Dec. Dig. ⬤⟜7.]

Appeal from Judgment on Report of Referee.

Action by Alpheus P. Perry against Emma O. Perry and another. Judgment for defendants, and plaintiff appeals.   Affirmed.

The opinion of Referee Berne A. Pyrke was as follows:

This action involves the question of the delivery of a deed.   The premises affected by the deed are a farm of several hundred acres in the town of Wilmington, Essex county, N. Y.   The plaintiff, for several years prior to 1909, owned the farm.   On that day he caused a deed of the farm to his son Sidney D. Perry to be prepared by an attorney at Lake Placid, and when prepared executed it.   In this deed he excepted the dwelling house, and reserved to himself the life use of an undivided half interest in the property conveyed.   He was about 70 years of age at the time, and a widower.   The son was about 30 years of age.   At the time he was living with this son and his son's wife in a house owned by the son in the neighborhood of the farm. He had other children, but they were apparently away from home.   The son had employment at Lake Placid, and on account of that employment was at home infrequently.

Previous to the execution of this deed the plaintiff had made a claim against the J. & J. Rogers Company for damages to the farm, and suit upon that claim had been contemplated but not brought.   His attorney in the matter was Samuel A. Pulford.   Mr. Pulford was also the draughtsman of the deed. At the time of the preparation of the deed Mr. Pulford warned the plaintiff against delivering it on account of the detrimental effect upon the contemplated suit, and suggested to the plaintiff that he leave the deed in the attorney's safe.   This the plaintiff declined to do, and left, taking the deed with him.   On his return to Wilmington the son was not at home.   The following morning he handed the deed to the son's wife.

Whether that delivery was for the benefit of the grantee or for safe-keeping is the crucial point in the case.   Up to this period there is no dispute in the record.   What occurred in connection with that delivery is sharply disputed. The only persons present at the time were the two principals, the plaintiff and his daughter-in-law.   All the testimony as to what was said and done comes

from them, and as both are vitally interested their testimony must be scrutinized with care.

[1] Whether there was a delivery at this time depends upon the intention of the grantor, but that intention naturally must be determined from his acts and words at the time, rather than from his present statement of his intention. His testimony in substance is that he handed the deed to his daughter-in-law with instruction to keep it until it was called for by him to be delivered to his son; that he told her that he could not deliver it then, because of the controversy with the Rogers Company, and to keep the deed until the matter was settled, and as soon as it was settled he would deliver the deed to his son. He stated upon the stand that it was his intention that his son should have the farm, and that the only reason why the deed was not delivered to him at the time was because of the pending trouble with the Rogers Company.

Mrs. Perry's testimony is sharply opposed to the plaintiff's. Her version is that a few days prior to the execution of this deed her husband was at home, and there was a talk between herself, her husband, and the plaintiff in regard to her and her husband moving back to another home which they owned in Lake Placid; that the plaintiff said that he did not want to leave Wilmington, and if his son and daughter-in-law left home no one would be with him, and that he wanted his son to sell the property at Lake Placid, and that if the son would pay the mortgage on the farm he would give him a deed of the property, and the son replied that he would do it as soon as the deed was in his possession, and the plaintiff said he would make a deed and went to Lake Placid for the purpose. On his return from Lake Placid he handed her the deed, stating: "Here is the deed of this property that I have had made out. Take it and take care of it." A few days later the son came home, and he and his father went over the deed together, reading it over, and that the plaintiff said not to have the deed recorded until after the lawsuit was ended, as he did not want the company to know that the title was not in his name.

It is undisputed that the deed remained in the possession of Mrs. Perry unrecorded from this time until after the death of her husband and the settlement of the Rogers action. Shortly before the commencement of the present action she caused it to be placed upon record.

Aside from the testimony of the two principals to the transaction there are but a few circumstances that throw any light upon the intention of the grantor as to delivery. Ordinarily in cases of this kind the subsequent attitude of the parties towards the possession of the property would be quite helpful in determining the question of whether or not there was a delivery, but in this case the testimony as to the possession is somewhat equivocal; but, so far as it is indicative of anything, it tends to substantiate the defendant's contention respecting delivery. Since the making of the deed the farm has been carried on by third parties on shares, and in two of the intervening years at least Mrs. Perry has had a share of the farm products. But it also appears that in the year preceding the making of the deed the plaintiff allowed his son, though having no ownership in the property, to have a share of the produce.

A straw pointing to a delivery of the deed is the undisputed circumstance that shortly after the execution of the deed Sidney D. Perry sold his home at Lake Placid and paid up the mortgage on the farm. This is quite significant of an undertaking on his part that he had acquired a certain present interest in the farm.

If the plaintiff's version upon the stand of the transaction when the deed was passed to Mrs. Perry is true, then there was no delivery; but I am unable to reconcile this testimony with the probabilities of the situation. The plaintiff gave no persuasive explanation of his reasons for executing a deed, if no delivery was contemplated. The only explanation that he attempted was: "Well, I was there, and talking with Mr. Pulford, and told him what my intention was, and asked him if he had a blank, and he said he had, so I had him make the deed. He advised me not to have it done then, but I said: 'I am here now, and don't know when I will be up again, and you can make it out and have it done with, and when the time comes I will give it to him.'" Then, again, I find it difficult to believe that, if the plaintiff's intention was not to deliver the deed at the time, but simply to place it for safe-keeping,

that he would select the wife of the grantee as custodian. He rejected the offer of the attorney's safe as a place of custody. There is no proof of a degree of confidence existing between the plaintiff and his daughter-in-law that would induce him to select her as the custodian in preference to his attorney. It is obvious that the risk of a misdelivery was much greater with the wife of the grantee as custodian than if his attorney occupied that position.

[2] While the case is not free from doubt, I think the preponderance of evi-dence is to the effect that the deposit of the deed with Mrs. Perry was for the use of the grantee; that the delivery was irrevocable, the plaintiff reserving no control or dominion over it. While I am satisfied as to this, I believe that there were conditions attached to the delivery, but that those conditions had for their purpose the shielding of the transaction from publicity and did not affect the irrevocability of the delivery. I do not think it reasonable that, with his attorney's warning sounding in his ears, the plaintiff would make a direct and unconditional delivery to the grantee. It is not clear from the evi-dence whether the condition was simply that the transaction should be kept private and the deed withheld from the record, or that the deed should be re-tained by Mrs. Perry until the termination of the Rogers Company contro-versy, and then be delivered by her to the grantee. I do not regard it as necessary for the decision of this case to make a determination as to the conditions. If I am right in my view that there was an irrevocable delivery to Mrs. Perry for the use of the grantee, the grantor surrendering all domin-ion and control over the deed, this action must fail. Church v. Gilman, 15 Wend. 656, 30 Am. Dec. 82; Crain v. Wright, 36 Hun, 74; Yutte v. Yutte, 39 Misc. Rep. 272, 79 N. Y. Supp. 492; Crain v. Wright, 114 N. Y. 307, 21 N. E. 401.

[3] If the fact is, as seems probable, that the deed was placed in Mrs. Perry's hands for delivery to the grantee upon the settlement of the Rogers action, title is now in the defendants, because the contingency contemplat-ed occurred prior to the commencement of this action, and the death of the grantee, in the meantime does not affect the situation. Cyc. states the rule as to the effect of the death of the grantee upon an escrow, as follows: "If the grantee die before final delivery, the depositary may make delivery to the grantee's heirs, and it will be held ordinarily to have taken effect in the ancestor, so as to transmit title through him to the heirs by inheritance, where nothing intervenes to prevent." 16 Cyc. 589.

The doctrine just stated seems to be the law of this state. "It is a well-settled rule with respect to an escrow, that if either of the parties die before the condition is performed, and afterwards the condition is performed, the deed is good, and will take effect from the first delivery. * * * It may, however, be questionable whether this deed is to be viewed as an escrow. The grantees had nothing to do, on their part, in order to make the deed abso-lute, which is usually the case where a deed is delivered as an escrow. The delivery here was, at all events, conditional, and to become absolute upon an event which has taken place; and, as in the case of an escrow, the deed will take effect from the first delivery." Ruggles v. Lawson, 13 Johns. page 286, 7 Am. Dec. 375. "The rule is well settled that, when a deed is at first de-livered to a third person as an escrow, such delivery is good and valid, and vests the title on * * * the specified contingency, and therefore if either of the parties dies before the condition is performed, and the condition is afterwards perfected, the deed avails." Hunter v. Hunter, 17 Barb. 82. "It is settled by authority that in such case the death of any of the parties before delivery to the grantee will not defeat the validity of the deed." Webster v. Kings Co. Trust Co., 80 Hun, 426. 30 N. Y. Supp. 357. See, also, Tracy v. Snowden, 23 Weekly Digest, 41, 38 Hun, 644.

In conclusion, it seems to me that in any permissible view of the evidence the conditions attached to the delivery of this deed have been met, and that title is now vested in the defendants, and that the plaintiff is not entitled to a cancellation of the deed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-ARD, and WOODWARD, JJ.

Fred H. La Duke, of Keeseville (Nelson L. Robinson and Francis X. Hennessey, both of New York City, of counsel), for appellant.

Spencer G. Prime, 2d, of Lake Placid (Riley & Gordon, of Plattsburg, of counsel), for respondent.

PER CURIAM. Judgment unanimously affirmed, with costs, on the opinion of Berne A. Pyrke, Referee.

---

SUTHERLAND v. MURRAY et al. (two cases).

(Supreme Court, Appellate Division, Second Department. November 24, 1915.)

1. TRIAL ☞356—VERDICT—FORM.

The action was to invalidate a probated will. The court submitted questions whether the testator was of sound mind, whether there was undue influence, and whether there was fraud. The jury were given a copy of the questions, and directed to answer them in writing and sign their names. After the jury's return, the court stated that, though all the jurors had signed the paper, they had not written answers to the questions. The foreman stated they answered "Yes" to all of them, and several jurors stated that they did not agree on the question as to fraud. The court directed the jury to retire and write in the answers to the questions. They retired and returned, and the court stated that they seemed to have changed their minds as to the first interrogatory as to soundness of mind, answering "No," asking whether they had announced their answer incorrectly at first; the foreman stating that they found for plaintiff, and that they had answered "No," under the impression that such answer should be given for the verdict for plaintiff to stand. The court asked if the jury determined the question of the validity of the verdict for plaintiff by finding that testator was insane. The foreman answered they did not, and that he could see it was a mistake to write in "No," that their verdict was that the will was procured by undue influence, and that they rendered no verdict on the question as to fraud. The court stated he thought the jury had become muddled, and would grant the motion to set aside the verdict, as it amounted practically to a disagreement. Held, that the granting of such motion was improper, since at no time in either of the jury's returns to the court was there any question upon the point that they had agreed upon undue influence as a producing cause of the execution of the instrument.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 849–854; Dec. Dig. ☞356.]

2. WILLS ☞355—UNDUE INFLUENCE—SUFFICIENCY OF EVIDENCE.

In an action to adjudge invalid a probated will, charged to have been procured by undue influence, evidence held sufficient to warrant jury's finding of such influence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 811–819; Dec. Dig. ☞355.]

3. NEW TRIAL ☞165—MOTION TO VACATE ORDER—TIME.

Where plaintiff did not move at Special Term in Kings county to vacate the order setting aside verdict for him until after the end of the Trial Term in Suffolk county, where the case was heard, the Special Term had no power to grant such motion.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 334, 335; Dec. Dig. ☞165.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes